FILED IN CHAMBERS
U.S.D.C. Rome

NOV 13 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

HOWARD GREGORY "GREG" CORDELL,
ALYSSA HARRELL CORDELL,
individually and as parent of
Lucas Gregory Cordell,

    Plaintiffs,

v.

PACIFIC INDEMNITY COMPANY,
CHUBB, a division of Federal
Insurance Company, and JOHN
DOES A THROUGH F,

    Defendants.

CIVIL ACTION

NO. 4:05-CV-167-RLV

O R D E R

    This is a suit on an insurance policy, arising from a fire which destroyed the plaintiffs' house. Pending before the court is the plaintiffs' Motion to Compel Production of Documents and Deposition from Defendants [Doc. No. 124]. In their motion, the plaintiffs seek "all documents . . . produced concerning internal investigation and communications; notes, electronic summaries, emails and voicemails, generated prior to the date of the denial of coverage on May 2, 2005"; the plaintiffs also seek permission to redepose George Clark for the sole purpose of pursuing information contained in those documents. The defendants oppose the motion, arguing that the material was "prepared in anticipation of litigation" and is, therefore, protected from discovery by Rule 26(b)(3), Federal Rules of Civil Procedure.

    Pacific Indemnity issued an insurance policy to the plaintiff which provided homeowners' coverage for a property located in

Cartersville, Georgia. On September 1, 2004, a fire destroyed the property. Following the investigation of the fire, the plaintiffs' insurance claim was denied on the grounds it was excluded based on the intentional acts, concealment and fraud exclusions contained in the homeowners' insurance policy.[1] The plaintiffs subsequently initiated this action, in which they seek to recover the policy limits of $1,851,000.00 for the structure and $926,055.00 for the contents. They also seek (1) bad faith penalties under O.C.G.A. § in an amount not less than $1,388,527.50, (2) damages for mental and physical pain and suffering in the amount of $1,500,000.00, and (3) punitive damages in an amount not less than $500,000.00.

On the day after the plaintiffs' house was destroyed by fire, the loss was reported to Pacific Indemnity, and the matter was assigned to Randy Campbell. On the following day, after the preliminary investigation of the claim indicated that the fire might have been intentionally set, the claim was transferred to the Special Investigations Unit and was assigned to Greg Clark.

Rule 26(b)(3) provides in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is

---

[1] In addition, the defendants allegedly denied the claim on the basis that the named insured had failed to comply with his duties under the policy.

2

>  unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Both parties cite to Carver v. Allstate Insurance Co., 94 F.R.D. 131 (S.D. Ga. 1982), for its discussion of Rule 26(b)(3) and how it is to be applied. This court agrees that *Carver* provides an excellent basis on which to proceed in the instant case, and the court adopts the reasoning used by the *Carver* court. As that court noted, "The decision whether insurance company investigatory documents were 'prepared in anticipation of litigation' turns, therefore, on the facts of each case." 94 F.R.D. at 134. Since the facts of *Carver* are very similar to those in the instant case, *Carver* is particularly helpful.

The general rule for determining whether a document was prepared in anticipation of litigation is to look at whether the document can be said to have been prepared because of the prospect of litigation or whether it was made in the regular course of business. The Carver court observed:

> Paradoxically, an insurance company investigating documents straddles both ends of this definition, because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation. Yet a hard and fast rule in either direction would be contrary to various goals of modern discovery practice. To foreclose from discovery all insurance company investigatory reports would unnecessarily hike the expense in proceeding against insurance companies, in violation of Rule 1 of the civil rules, and once again, may render the factfinding process a cat and mouse game. Yet to open for discovery these internal documents may inhibit a claims adjuster from reporting all his thoughts and ideas regarding a claim, because no protection against discovery is afforded documents containing mental impressions not prepared in anticipation of litigation.

> Investigation reports might then be less reliable in evaluating and disposing of claims and an insurance company's claims evaluation process as a whole might be disrupted. In addition, full discovery may allow a plaintiff proceeding against an insurance company to co-opt "the wits" of his adversary, in contravention of the Hickman [v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947)] doctrine.

94 F.R.D. at 134 (citations omitted).

The court then went on to explain the best way to handle this paradox:

> Courts, however, have found a solution to this dilemma in the very means by which an insurance company conducts its business. In the early stages of claims investigation, management is primarily concerned not with the contingency of litigation, but with "deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter." At some point, however, an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation. This is the point where the probability of litigating the claim is substantial and imminent. The point is not fixed, it varies depending on the nature of the claim, and the type of investigation conducted. The decision whether insurance company investigatory documents were "prepared in anticipation of litigation" turns, therefore, on the facts of each case.

*Id.*

*Carver* dealt with a situation where a claims representative investigated a fire loss from July 1, 1981, through August 26, 1981. During this time, he prepared daily "diary sheets" detailing his investigatory work. On August 26, the case investigation was assigned to a senior claims representative for two reasons--the claimed monetary loss was substantial and the insurance company management had indications (primarily from the initial claims

4

representative and an independent investigator) that the fire was the result of arson. The senior claims representative continued the investigation until November 6, 1981, when he turned his file over to an insurance defense attorney; during this time he also made "diary sheets" and prepared monthly reports which were forwarded to in-house counsel.

The court held that the reports prepared by the initial investigator was subject to discovery but that the reports made by the succeeding investigator were not.

> These facts indicate to the Court that when Allstate's investigation of the plaintiff's fire loss was assigned to John Palmer [the succeeding investigator], he conducted the investigation in anticipation of litigation, and all documents emanating therefrom were "prepared in anticipation of litigation" as required by Rule 26(b)(3). First, claims for fire loss, unlike other types of property loss, can more easily be cloaked in fraudulent or criminal conduct, and engender more wariness from insurance companies at the time of filing. Second, in the instant case, prior to Palmer's involvement, initial wariness was fortified by detailed suspicions from both in-house and independent investigators. Third, Palmer was assigned to continue the investigation precisely because of the suspicious conduct that Allstate believed it had uncovered. The Court thinks that at this point in the investigation the likelihood that litigation would ensue was substantial, and Palmer conducted his investigation with the knowledge of this probability and the collateral likelihood that his reports would be used in the eventual litigation. Indeed, the monthly summary reports prepared by Palmer were forwarded directly to Allstate's claims attorneys, indicating at the very least, a close monitoring of the investigation by corporate counsel.

*Id.* at 135.

Like the court in *Carver*, this court believes that the proper line of demarcation is when the plaintiffs' claim was turned over

to the Special Investigations Unit and assigned to Greg Clark. The testimony before the court indicates that there was a genuine suspicion that the fire was the result of arson and that the plaintiffs were suspects. The fact that such suspicions were raised almost immediately, rather than after months of investigation (as was the case in *Carver*) is irrelevant; it is the fact of suspicion, not the date which triggers the application of Rule 26(b)(3) protection. Furthermore, if, as suggested by the defendants in their pleadings, Greg Cordell hired both civil and criminal defense lawyers immediately after the fire, the defendants could reasonably conclude that the insurance claim was headed to litigation.

For the foregoing reasons, the court concludes that the documents sought by the plaintiffs were made in anticipation of litigation. Additionally, the plaintiffs have not shown that any facts contained in those documents (as opposed to mental impressions and conclusions) are not otherwise discoverable through depositions and interrogatories.

Finally, the mere fact that the plaintiffs have alleged negligence and bad faith in the investigation of their claims does make the material discoverable. To hold otherwise would mean that the rule would never apply since a plaintiff could easily defeat its protection by the simple expedient of adding a negligence or bad faith claim. The court declines to eviscerate the rule in that manner.

6

For the foregoing reasons, the plaintiffs' Motion to Compel Production of Documents and Deposition from Defendants [Doc. No. 124] is DENIED.

SO ORDERED, this 13TH day of November, 2006.

_____
ROBERT L. VINING, JR
Senior United States District Judge