FILED IN CHAMBERS
U.S.D.C. Rome

OCT 1 2 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

HOWARD GREGORY "GREG" CORDELL,
ALYSSA HARRELL CORDELL,
individually and as parent of
LUCAS GREGORY CORDELL,

    Plaintiffs,

v.

PACIFIC INDEMNITY COMPANY,
CHUBB & SON, a division of
Federal Insurance Company, and
JOHN DOES A through F,

    Defendants.

CIVIL ACTION

NO. 4:05-CV-167-RLV

O R D E R

This is a suit on an insurance policy, arising from a fire which destroyed the property located at 179 Old Mill Road, Cartersville, Georgia. Pending before the court are the defendants'[1] Motion for Partial Summary Judgment Regarding Count I Alleging Recovery for the Dwelling [Doc. No. 211], Motion for Partial Summary Judgment Regarding Count I Alleging Recovery for Personal Property that are Fixtures [Doc. No. 213], and Motion for Partial Summary Judgment Regarding Count III Alleging Recovery for Intentional Infliction of Emotional Distress [Doc. No. 214]. The

---

[1] The John Doe defendants were dismissed by prior order of this court.

plaintiffs have filed a motion for partial summary judgment [Doc. No. 269] but that motion is not yet ripe for determination.

Howard Gregory Cordell purchased the property located at 179 Old Mill Road, Cartersville, Georgia, in his name only. In connection with this purchase, Mr. Cordell obtained a homeowner's insurance policy (No. 1251470101) from Pacific Indemnity. That policy provides that payment for any loss will be made to those insured under the policy "as interests appear."

On September 1, 2004, a fire destroyed the property. Following the investigation of the fire, Mr. Cordell's insurance claim was denied on the grounds it was excluded based on the intentional acts, concealment and fraud exclusions contained in the homeowners' insurance policy. [2] Despite denying Mr. Cordell's claim, Pacific Indemnity paid $1,005,804.20 on November 1, 2004, to Washington Mutual, Mr. Cordell's mortgage company, for its interest in the property (representing the outstanding balance of the loan made to purchase the property). The plaintiffs subsequently initiated this action, in which they seek to recover the policy limits of $1,851,000.00 for the structure and $926,055.00 for the

---

[2] In addition, the defendants allegedly denied the claim on the basis that the named insured had failed to comply with his duties under the policy.

contents. They also seek (1) bad faith penalties under O.C.G.A. § in an amount not less than $1,388,527.50, (2) damages for mental and physical pain and suffering in the amount of $1,500,000.00, and (3) punitive damages in an amount not less than $500,000.00.

In addition to seeking damages for the loss of personal property, the plaintiffs seek to recovery for damages to the dwelling, landscaping, and other structures destroyed by the fire. However, on October 11, 2005, after suit had been filed, Mr. Cordell sold the property for $900,000. It is undisputed that no repairs were made to the property between the time of the fire and the date on which the property was sold.

In McKay v. Consolidated American Insurance Co., 149 Ga. App. 691 (1979), the court rejected the plaintiff's argument that their entitlement to recover under an insurance policy vested at the time of the loss, making the subsequent foreclosure irrelevant. Instead, the court held that where a policy provides that any loss payable would be paid to the mortgagee and the insured "as interests appear," the insured would have no insurable interest after the property had been sold.[3]

---

[3] In both McKay and in the instant case the insureds had expended no money on repairs between the time of damage and the subsequent sale of the property.

3

Because Mr. Cordell has sold the property located at 179 Old Mill Road, Cartersville, Georgia, he no longer has an insurable interest in that property and, consequently, cannot recover for any damages to the dwelling that was located on the property. Therefore, the defendants are entitled to summary judgment on that part of Count I which seeks recovery for damages to the dwelling.

Fixtures, which are realty not personalty, consist of "[a]ll things permanently attached to land or to the buildings thereon." O.C.G.A. § 44-1-2(a)(2). "Anything which is intended to remain permanently in its place even if it is not actually attached to the land is a fixture which constitutes a part of the realty and passes with it." O.C.G.A. § 44-1-6(a). Thus, a fixture is an item which has been "attached to the realty as a part thereof, and not merely for incidental, transitory use." Aquafine Corp. v. Fendig Outdoor Advertising Co., 155 Ga. App. 661 (1980); *see also* Fulton County Board of Assessors v. McKinsey & Co., 224 Ga. App. 593 (1997) (improvements to realty which formed an integral part of the building and whose removal would do injury to the realty were fixtures).

The defendants have submitted the affidavit of William J. Marx, Executive General Adjuster for Chubb & Son, in which he lists several items that were purchased with the house because they were

4

made to fit with the architectural aspects of the house and which should be considered fixtures. The plaintiffs do not specifically deny that the listed items are fixtures; instead they argue simply as follows: "Plaintiffs contend that few items, none of which are at issue in the present case, e.g., a stone or brick fireplace, are easily deemed fixtures. Plaintiffs assert that the legal definition of fixtures could not practicably be specific. As such the determination of what constitutes [sic], in most cases, would be an issue of fact." Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment Regarding Count I Alleging Recovery for Personal Property That Are Fixtures at p. 2.

Mr. Marx stated in his affidavit that the items listed should be considered fixtures because they were specifically designed to fit with the architectural design of the house and, thus, they were considered part of the realty. The plaintiffs have not shown that the listed items were not to be considered part of the realty. Instead, they have simply stated that what constitutes a fixture is not easily determined and that, consequently, a jury should make that factual determination as to all items listed. The court concludes that such a conclusory allegation is insufficient to raise a general issue of material fact.

The court has reviewed the list, and finds that the items listed in paragraph 7 of Mr. Marx's affidavit are, in fact, fixtures. Because these items constitute part of the realty and the realty has been sold, leaving the plaintiffs with no insurable interest, the plaintiffs may not recover for these items. Consequently, the defendants are entitled to partial summary judgment on that part of Count I which seeks recovery for damages to the fixtures contained in the dwelling.

The defendants also seek partial summary judgment on Count III, wherein the plaintiffs seek to recover for the intentional infliction of emotional distress. In their second amended complaint, the plaintiffs allege that the defendants performed the following acts and that such actions were done with the intent of causing emotional distress:

> (a) offered a 'reward' in the amount of $35,000.00 to a convicted multiple felon currently incarcerated for theft by deception and having the following convictions: racketeering, multiple counts of theft by deception, arson, motor vehicle theft, felony possession of narcotics, habitual violator;
>
> (b) intentionally and/or negligently suggested during their investigation that Plaintiffs' banker discontinue conducting business with them;
>
> (c) intentionally and/or negligently refused and/or failed to follow any leads that do not implicate Plaintiffs, seeking out enemies or any individual that

6

may have had a prior business or personal dispute with Plaintiffs;

(d) suggested to two separate motor vehicle insurers of Plaintiff's and Plaintiff's wife they should deny coverage, which Foremost Insurance Company and Progressive Insurance Company refused based on lack of evidence that Plaintiff was responsible for the fire loss;

(e) falsely and/or negligently suggested to family, friends and business associates that Plaintiffs are or were in financial trouble with all Plaintiffs' records in their possession showing timely payment of debt and good credit at the time of fire loss;

(f) falsely and/or negligently suggested to family, friends and business associates that Plaintiffs were having marital problems;

(g) falsely and/or negligently suggested to family, friends and business associates that Plaintiffs were responsible directly or indirectly for the fire loss;

(h) encouraging fire department officials to file charges against Plaintiff Greg Cordell which they have refused to do; and

(i) falsely and/or negligently suggested to the State of Georgia Insurance and Fire Commissioner that Plaintiff Greg Cordell may have directly or indirectly been responsible for the fire loss.

Second Amended Complaint at ¶ 32.

Moreover, in his deposition, Mr. Cordell testified that the defendants (1) insinuated that his marriage was bad by asking other people about his marriage, (2) had private eyes stalking him, (3) gave his private documents to law enforcement, (4)

7

offered a reward for information implicating him in the fire, and (5) colluded with law enforcement officers and the media to slander his name.

Initially, the defendants argue that the court erred in allowed the plaintiffs to amend their complaint to assert a claim for intentional infliction of emotional distress. The defendants argue now, as they did then, that the exclusive remedy for bad faith or wrongdoing by the insurer is O.C.G.A. § 33-4-6. In granting the motion for leave to amend, the court relied on Delancy v. St. Paul Fire & Marine Insurance Co., 947 F.2d 1536 (11th Cir. 1992). The defendants contend that a bad faith claim outside O.C.G.A. § 33-4-6 is available only when cases where the insurer is dealing with third parties (e.g., failure to settle in good faith) and is not available in denying a first party insurance claim. The defendants may be correct in this interpretation, but the court does not need to reach that issue.

Even if the plaintiffs could assert a claim for intentional infliction of emotional distress, their claim would fail as a matter of law. The burden on the plaintiff to prove intentional infliction of emotional distress is a "stringent one." Ingram v. JIK Realty Co., Inc., 199 Ga. App. 335, 336 (1991). "To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to

the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Amstadter v. Liberty Heathcare Corp. 233 Ga. App. 240, 242-43 (1998).

The court in Northside Hospital, Inc. v. Ruotanen, 246 Ga. App. 433, 434 (2000), went on to say:

> Moreover, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

The plaintiffs do not cite any statements made to them that caused them emotional distress. "Defamatory remarks made to others or to the public in general are classic examples of conduct that, though harmful to the plaintiff, was directed toward the hearer of the statements, not to the plaintiff, and thus is not actionable as intentional infliction of emotional distress." Lively v. McDaniel 240 Ga. App. 132, 134 (1999). Statements made to third parties simply are not actionable.

Finally, even if the defendants did all the acts alleged in the complaint and in Mr. Cordell's deposition, the court would

still conclude that the plaintiffs have failed to show conduct that is so outrageous, atrocious, utterly intolerable, and beyond all realms of decency that would constitute intentional infliction of emotional distress. Consequently, the defendants are entitled to partial summary judgment on Count III of the second amended complaint.

In summary, the defendants' Motion for Partial Summary Judgment Regarding Count I Alleging Recovery for the Dwelling [Doc. No. 211], Motion for Partial Summary Judgment Regarding Count I Alleging Recovery for Personal Property that are Fixtures [Doc. No. 213], and Motion for Partial Summary Judgment Regarding Count III Alleging Recovery for Intentional Infliction of Emotional Distress [Doc. No. 214] are GRANTED.

SO ORDERED, this 12th day of October, 2007.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge